UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| DAVID KING, | | |
| | Plaintiff, | REPORT and |
| v. | | RECOMMENDATION |
| LM INSURANCE CORPORATION, | | 20-CV-1426JLS(F) |
| | Defendant. | |

_____

APPEARANCES:    E. PETER PFAFF, ESQ.
                Attorney for Plaintiff
                673 Main Street, Suite 5
                East Aurora, New York  14052

                JAFFE & ASHER
                Attorneys for Defendant
                GLENN P. BERGER,
                MARSHALL T. POTASHNER, of Counsel
                600 Third Avenue, 9th Floor
                New York, New York  10016

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on March 4, 2021, for all pretrial matters including preparation of a report and recommendation on dispositive motions (Dkt. 16).  It is presently before the court on Defendant's motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Count II of the Second Amended Complaint for failure to state a claim (Dkt. 27).

## BACKGROUND

This action seeking insurance coverage for Plaintiff's losses to Plaintiff's real and personal property under a homeowners insurance policy issued by Defendant LM

Insurance Corporation on Plaintiff's residence, was commenced on October 5, 2020 alleging breach of contract and Defendant's violation of N.Y. Business Law Section 349 ("§ 349").  In lieu of an answer, Defendant moved, on December 31, 2020, to dismiss Count II of the Complaint alleging a violation of § 349.  In accordance with the parties' stipulation, an Amended Complaint was filed on January 28, 2021, and Defendant's motion to dismiss was withdrawn.  (Dkt. 12).  Defendant moved on February 16. 2021 to dismiss the Amended Complaint (Dkt. 15).  On June 23, 2022, the undersigned filed a Report and Recommendation that Defendant's motion be granted (Dkt. 20).  In a Decision and Order, filed July 11, 2022, the Report and Recommendation was adopted by Judge Sinatra (Dkt. 21).

On August 5, 2022, Plaintiff filed a Second Amended Complaint (Dkt. 26).  In the Second Amended Complaint ("SAC"), Plaintiff asserts, as Plaintiff did in the Amended Complaint, two claims for relief including common law breach of contract, SAC ¶¶ 4-12 ("First Claim"), and deceptive acts and practices in violation of N.Y. Bus. law § 349 ("Second Claim").  Defendant's motion to dismiss the Second Claim of the SAC was filed August 26, 2022 (Dkt. 27) together with Declaration of Marshall T. Potashner, [Esq.][1] In Support Of Motion To Dismiss (Dkt. 27-1) attaching Exhibits A – F (Dkt. 27-2-7) ("Defendant's Exh(s). __") and LM Insurance Corporation's Memorandum of Law In Support Of Motion To Dismiss Second Claim For Relief In Second Amended Complaint (Dkt. 27-8) ("Defendant's Memorandum").  On August 29, 2022, Defendant filed the Declaration of Marshall T. Potashner [Esq.] In Support Of Motion To Dismiss (Dkt. 29) attaching Exhibit O, which provided the first page of Defendant's  Exh. D, an August 22,

---

[1]  Bracketed material added.

2

20218 letter from Defendant to Plaintiff filed August 26, 2022 (Dkt. 27-5).  Plaintiff's Memorandum In Opposition To Defendant's Rule 12(b)(6) Motion To Dismiss count II Of The Second Amended Complaint was filed on September 28, 2022 (Dkt. 30) ("Plaintiff's Memorandum").  LM Insurance Corporation's Reply Memorandum Of Law In Further Support Of Motion To Dismiss The Second Amended Claim For Relief in Second Amended Complaint was filed October 11, 2022 (Dkt. 31) ("Defendant's Reply").  Oral argument was deemed unnecessary.  Based on the following, Defendant's motion should be GRANTED.

## FACTS[2]

Plaintiff David Hill ("Plaintiff"), obtained from Defendant LM Insurance Corporation ("Defendant"), a homeowner's insurance policy, specifically, Policy # 35-221-269497-40 8 0 ("the Policy"), for his residence located at 9587 West Hill Road in the town of Boston, New York ("the home" or "the insured premises").  SAC ¶ 8.  On July 4, 2017, Plaintiff, in connection with divorce proceedings, moved out of the home, returning on May 25, 2019 when Plaintiff was awarded the home in connection with the matrimonial proceedings.  SAC ¶ 5.  Upon returning to the home, Plaintiff discovered the home had been "extensively vandalized and that numerous items of his personal property, including a safe and its contents had been stolen."  SAC ¶ 6.  Further, "[i]tems of personalty which were left, such as a sofa, were severely damaged and rendered worthless."  *Id*.

---

[2] Taken from the SAC.

3

On June 5, 2019, Plaintiff contacted Defendant about filing an insurance claim under the Policy for vandalism and theft at his home ("insurance claim") and met with Defendant's insurance adjusters to whom Plaintiff gave full access to his property. SAC ¶¶ 7-8. According to Plaintiff, Defendant's agents and employees "encouraged" Plaintiff to use his cell phone to take photos of damaged items and of damage to the insured property's structures, but advised Plaintiff did not need to obtain estimates of the damage; rather, Defendant would supply the damage estimates which Plaintiff would use to prepare his insurance claim. *Id*. ¶ 9. Plaintiff complied with Defendant's instructions and investigation of Plaintiff's claim including submitting to two days of questioning by Defendant's counsel, and providing Plaintiff's personal documents and information including, *inter alia*, a cellphone company statement detailing cellphone calls and texting activity. *Id*. ¶¶ 10-11.

On September 4, 2019, Defendant sent Plaintiff a preprinted document titled "Homeowner Loss Information Sheet" ("Loss Information Sheet"), accompanied by a letter from Defendant's Claims Handler ("Claims Handler's Letter"), advising Defendant would provide an estimate of damages to the insured premises' structures. SAC ¶¶ 14, 17. The Loss Information Sheet stated, "Your Claim Handler will complete an itemized estimate of your damages and give you a copy," *id*., which was consistent both with statements in the Claims Handler's Letter and the earlier statements Defendant's agents made to Plaintiff. *Id*. ¶¶ 14-15. On September 4, 2019, Defendant also provided Plaintiff with a Proof of Loss form ("Proof of Loss form"), for which the accompanying instructions stated that "the defendant Insurance Company would furnish estimates of [Plaintiff's] damages and loss which should be used by the plaintiff and other consumers

4

as a guide in filling out the [Proof of Loss] form." *Id*. ¶ 15.  The Proof of Loss form and its instructions "is a standard form regularly used by Defendant in its dealings with members of the consuming public who are making claims on their homeowners policy [with Defendant].  It is used by Defendant generally in its claim handling and is not unique to Plaintiff's claim." *Id.* ¶ 15.  Plaintiff asserts the representations provided on the Homeowners Information Sheet and Proof of Loss form were deceptive and misleading to Plaintiff and the consuming public in that Plaintiff and the public were misled as to the Defendant's intention to provide the loss estimates where the Defendant had determined to deny coverage. *Id.* ¶ 16.

Defendant requires the Proof of Loss form be completed as a prerequisite to processing an insurance claim.  SAC ¶ 17.  Despite representations made to Plaintiff by Defendants' agents, employees, and Claims Handler, as well as statements in the Homeowner Loss Information Sheet and the Proof of Loss form, no itemized estimate of damages was forthcoming from Defendant. *Id*. ¶ 18.  In response to Defendant's request in December 2019, Plaintiff, on January 2, 2020, completed the Proof of Loss form and submitted it to Defendant.  SAC ¶¶ 19-20.  On March 24, 2020, Defendant notified Plaintiff that Plaintiff's claim was disclaimed. *Id.* ¶ 21. Defendant's failure to provide Plaintiff with timely estimates of the structural damage to his home rendered it more difficult for Plaintiff to prove the full amount of his insurance claim, delayed Plaintiff's submission of the Proof of Loss form, thereby rendering preparation of the form more time consuming and mentally stressful. *Id.* ¶ 22.  Further, the delay caused Plaintiff to incur increased attorney fees because of the additional time required to assist

5

Plaintiff with completing the Proof of Loss form.  *Id*. Defendant disclaimed all liability under the Policy and refused to pay anything on Plaintiff's insurance claim.³  *Id*. ¶ 21.

## DISCUSSION

1. **Motion to Dismiss**

Defendant moves to dismiss Plaintiff's Second Claim alleging a violation of N.Y. Bus. Law § 349 ("§ 349").  A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As such, the Supreme Court requires application of "a 'plausibility standard . . . .'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient

---

³ Other than describing the insurance claim as "belatedly submitted" and completed without the necessary damage estimates that Defendant never provided, Plaintiff does not allege the reason Defendant gave for denying the insurance claim.  Nor did Plaintiff include a copy of Defendant's notice to Plaintiff advising the insurance claim was denied from which the court could construe why Defendant denied the insurance claim.  Although Defendant argues that coverage was denied based on a determination of fraud, Defendant's Memorandum at 6; Defendant's Reply at 7, which disclaimer would render the issue of Defendant's failure to timely provide the loss estimates irrelevant to the Second Claim, because the matter is before the court on a motion to dismiss pursuant to Rule 12(b)(6), the court does not consider Defendant's asserted reason for denying the insurance claim.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557)

A Rule 12(b)(6) motion is addressed to the face of the pleading. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

7

Preliminarily, the court addresses Plaintiff's argument that the copy of the September 4, 2019 letter, submitted by Defendant, *see* Defendant's Exh. C (Dkt. 27-4) that Defendant sent to Plaintiff, to which the SAC referred, *see* Dkt. 26 ¶¶ 14, 15, is not a true copy of that letter.  Plaintiff's Memorandum at 9 (Dkt. 30 at 9) ("The Proof of Loss form which Defendant has put before the court at Dkt. 27-5 and also at Dkt. 29-1 is not the copy of the complete form").  Plaintiff has provided a copy of the September 4, 2019 letter with Plaintiff's opposition papers, specifically, Affirmation [of E. Peter Pfaff dated September 28, 2022] (Dkt. 30-1), *see* Dkt. 30-1 & 2.  Plaintiff further asserts that the Proof of Loss form, submitted by Defendant as Exhiibt D (Dkt. 27-5), is also not a true copy of the Proof of Loss form submitted by Plaintiff to Defendant as such copy lacks the instructions, which Plaintiff asserts were provided to Plaintiff, and which Plaintiff asserts appeared on the reverse side of page 1 of the actual form.  *See* Affirmation of E. Peter Pfaff.  Dkt. 30-1 ¶ 3.  Plaintiff therefore contends neither of these two documents, C and D, should be considered by the court in considering Defendant's Rule 12(b)(6) motion.  Dkt. 30 at 9.  In response, Defendant contends only that the Proof of Loss form submitted Defendant as Defendant's Exh. D (Dkt. 27-5) is a complete copy of the form and that, contrary to Plaintiff's assertion, there is no missing page of text.  Defendant's Reply at 2 (Dkt. 31 at 6).  Defendant further argues that the Proof of Loss form does not state, contrary to Plaintiff's assertion, that Defendant "would provide estimates of damages which the insured should use in completing the Proof of Loss form."  Dkt. 31 at 6-7.  However, where documents referred to in the complaint are in dispute the court may not consider them in addressing a Rule 12(b)(6) motion.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (even if a document is

considered "'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *Nicosia*, 834 F.3d at 231 (quoting *DeFolio v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2016) (further quotation omitted)).  Therefore, Plaintiff's dispute of the authenticity of Defendant's Exhs. C and D, precludes the court's consideration of the documents in analyzing Defendant's motion, as well as whether to convert Defendant's motion into one for summary judgment.  *Nicosia*, 834 F.3d at 231.  In short, if the authenticity of a document on which the defendant relies in moving to dismiss is disputed, "the district court may not dismiss the complaint with those materials is mind."  *Nicosia*, 834 F.3d at 231 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).  Accordingly, neither the September 4, 2019 letter, Defendant's Exh. C, nor the Proof of Loss form, Defendant's Exh. D, will be considered in connection with Defendant's Motion.

In the instant case, as noted, Background, *supra*, at 2, Plaintiff's Second Claim alleges a violation of N.Y. Bus. Law § 349 which provides in relevant part that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Bus. Law § 349(a) (McKinney 2014).  To establish a *prima facie* case under § 349(a), "a plaintiff must allege "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021). "Section 349 does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers."  *Schlessinger v. Valspar Corp.,* 991 N.E.2d 190, 193

(N.Y. 2013). "As a threshold matter, in order to satisfy General Business Law § 349 plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented'" *Gaidon v. Guardian Life Ins. Co. of Am.,* 725 N.E.2d 598, 604 (N.Y. 1999) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 647 N.E.2d 741, 744 (N.Y. 1995)).

Plaintiff's Second Claim alleging a violation of § 349 asserts that Defendant, by first instructing Plaintiff to await Defendant's estimate of Plaintiff's damages which Plaintiff was to include on the Proof of Loss form to submit in connection with Plaintiff's claim, and then failing to timely provide Plaintiff with such damage estimate caused Plaintiff to be "harmed," SAC ¶ 22, in that proving his claim was made more difficult and delayed preparation and filing of the Proof of Loss claim. *Id.* These allegations sufficiently allege the second factor for a *prima facie* case, *i.e.*, that Defendant's alleged conduct in advising Plaintiff to refrain from completing the Proof of Loss form and submitting the insurance claim until after Defendant provided the estimated loss to Plaintiff to include on the Proof of Loss form, and then failing to provide Plaintiff with the estimated loss figures caused Plaintiff to experience difficulty in submitting the Proof of Loss form in a timely manner causing Plaintiff "harm." SAC ¶ 22. The allegations, however, fail to plausibly establish the first factor requiring the challenged act be consumer oriented.

In particular, because § 349 "was intended to 'afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds,'" *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 (citing Mem. of Governor Rockefeller, 1970 N.Y. Legis.Ann., at 472-73), a plaintiff

alleging a violation of § 349 need not allege "a repetition or pattern of deceptive behavior." *Id*. Nevertheless, the alleged deceptive conduct "must have a broad impact on consumers at large; '[p]rivate contract disputes unique to the parties * * * would not fall within the ambit of the statute.'" *New York University v. Continental Ins. Co.,* 662 N.E.2d 763, 770 (N.Y. 1995) (quoting *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745). "A '[p]rivate contract dispute[ ] unique to the parties ... would not fall within the ambit of the statute.'" *O.K. Petroleum v. Travelers Indem. Co.*, 2010 WL 2813804, at *5 (S.D.N.Y. July 15, 2010) (brackets in original) (quoting *DePasquale v. Allstate Ins. Co.,* 179 F.Supp.2d 51, 61–62 (E.D.N.Y.2002), *aff'd*, 50 Fed. Appx. 475 (2d Cir.2002)). In *O.K. Petroleum*, the plaintiffs alleged that "the practices complained of are part of a systemic program aimed at the policyholders generally, having an impact on insurance consumers at large," but failed to allege any facts supporting such argument, considered "speculative" by the court. *Id*. Significantly, the plaintiffs alleged that the defendant insurance company, in violation of § 349, "employed the alleged deceptive practices of inordinate delays, unilateral changing of contract terms, and denial of benefits to other insureds who possessed these form policies." *Id*. (internal citations and brackets omitted). Because the plaintiffs alleged no facts to support such speculative argument, the district court dismissed the claim for failing to state a claim. *Id*.

In this case, Plaintiff asserts that it is plausible that Plaintiff believed Defendant's repeated representations regarding the use of loss estimates that were to be provided by the Defendant and that Defendant falsely made misrepresentations with regard to the asserted estimates to be provided by Defendant's agent that caused Plaintiff stress,

11

and increased expense and delay in submission of the Proof of Loss form.  Plaintiff's Memorandum at 10 (Dkt. 30 at 10).  Specifically, Plaintiff alleges that the Proof of Loss form which Plaintiff was sent on September 4, 2019, Defendant's Exh. C, falsely stated that Plaintiff was to await loss estimates that would be provided by the claims adjuster assigned to Plaintiff's claim, SAC ¶ 15, and that such misrepresentation was deceptive and misleading to other homeowners' insurance policy holders as Defendant "views these promises to be inapplicable in those cases[4] in which the Defendant has decided that it will deny coverage or is likely to deny coverage," SAC ¶ 16, which would necessarily include the fact, undisputed by Plaintiff, that Defendant eventually disclaimed coverage based on the fraudulent nature of Plaintiff's claim.  *See* Defendant's Exh. F (Dkt. 27-7 at 5) (March 20, 2020 Letter from Defendant to Plaintiff advising Plaintiff's claim had been disclaimed based on Plaintiff's fraud).  Thus, Plaintiff's allegation intended to demonstrate Plaintiff has plausibly alleged against Defendant a consumer oriented cause of conduct falls short as it demonstrates to the contrary, *i.e.*, that Defendant's alleged deception arises only in a limited number of insureds' claims, *i.e.*, those in which, according to Plaintiff, Defendant has determined, in individual cases, to deny the claim or where it is likely to do so such as in the case of a disclaimer based on a claimant's fraud.  SAC ¶ 16.  As such, Plaintiff has failed to allege Defendant's deception is part of a "systemic program aimed at the policyholders generally, having an impact on insurance consumers at large."  *O.K. Petroleum*, 2010 WL 2813804, at *5.  Accordingly, Plaintiff's allegations, even liberally construed, at best shows a private contract dispute over policy coverage and the processing of Plaintiff's

---

[4] Unless otherwise indicated, underlining has been added.

insurance claim filed with Defendant, based on the facts of Plaintiff's underlying claim, not conduct affecting the consuming public at large, without regard to the facts of Defendant's claimants' claims in general, and thus do not plausibly state a cause of action under § 349.  *See Ripka v. Safeco Ins.*, 2015 WL 3397961, at *3 (N.D.N.Y. May 26, 2015) (plaintiff failed to state a § 349 claim based on allegations that defendant insurance company failed to timely process plaintiff's claims as such allegation "would not mislead public generally."); *see also*, *Plavin v. Group Help Inc.*, 146 N.E.3d 1164, 1170 (N.Y. 2020) (defendant's misleading marketing information disseminated to to city employees on defendant's website stated a consumer oriented claim); *New York Univ.*, 662 N.E.2d at 770 (sale of commercial crime liability insurance policy by large national insurance company and insurer's handling of claim filed by insured major university were not "consumer-oriented conduct" where insured university acted through a director of insurance, policy was not standard, premiums were in excess of $55,000, and the sale of the policy was handled by large broker).

     As to the materiality factor, the second factor for deceptive conduct to be material, *i.e.*, make a difference to the plaintiff, conduct must be likely "to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborer's Local 214 Pension Fund*, 647 N.E.2d at 745.  Here, Plaintiff alleges he was misled by the Defendant's statement on the reverse side of the first page of the Proof of Loss form that Plaintiff should await cost estimates to be provided by Defendant.  Crediting such allegations as true as required on a Rule 12(b)(6) motion, *Trustees of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566 (court required on motion to dismiss to accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor), a

reasonable consumer would have been misled as to when the Proof of Loss form was required to be submitted to Defendant. As such, Defendant's alleged deceptive language was material.

Regarding the third factor for a valid § 349 claim, that the alleged deceptive conduct cause plaintiff "a consumer injury or harm to the public interest, *Electra*, 987 F.3d at 258 (underlining added), Plaintiff's claim also fails. First, as Defendant contends, Defendant's Memorandum at 18 (Dkt. 31), Plaintiff's asserted "harm," SAC ¶ 22, resulted from Plaintiff's delay in completing the Proof of Loss form because Defendant had failed to provide the necessary cost estimates. SAC ¶ 15. Thus, according to Plaintiff's allegations, it was not necessary to complete the Proof of Loss form until the putative cost estimates were received from Defendant, which Plaintiff alleges never occurred. SAC ¶ 18 ("Despite [Plaintiff's] written requests for the estimate, they were never furnished."). Therefore, according to Plaintiff's allegations, it never became necessary for Plaintiff to complete the Proof of Loss form as Defendant never provided the disputed estimates and any difficulty and legal expenses experienced by Plaintiff resulted from Plaintiff's own independent decision-making and were not the result of Defendant's alleged deception regarding provision of cost estimates. Moreover, under § 349, a valid consumer injury requires that such injury be proximately caused by the alleged consumer oriented deception. *See Frintzilas v. DirecTV, LLC*, 731 Fed.Appx. 71, 72 (2d Cir. 2018) ("Plaintiffs must "plead that they have suffered actual injury caused by a materially misleading" act, not that a misleading act led to further steps which eventually harmed them." (quoting *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009); *see also Stutman v. Chem.*

*Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (valid § 349 claim requires that "the defendant's material deceptive act caused the injury."). Here, as discussed, *supra*, Plaintiff's allegations fully negate any plausible explanation for the "harm" Plaintiff asserts Plaintiff suffered as the result of Defendant's deception; rather, such allegations solely infer that any harm Plaintiff allegedly suffered resulted from Plaintiff's own decision to proceed with filing the Proof of Loss form without the promised cost estimates as Plaintiff expected from Defendant. Further, Plaintiff's own conduct, as alleged, fully negates Plaintiff incurred a consumer injury. Plaintiff's decision to provide the proof of loss form in response to Defendant's December 2019, SAC ¶¶ 19-20, does not overcome this deficiency as Plaintiff's decision to comply demonstrates Plaintiff was no longer acting in response to Defendant's alleged deception regarding Defendant's intention to provide the cost estimates. Accordingly, Plaintiff's Second Claim also fails to plausibly plead that Defendant's alleged misconduct proximately cause Plaintiff to suffer "a consumer injury or harm to the public interest," *Electra*, 987 F.3d at 258, required to state a valid § 349 claim, Defendant's motion seeking dismissal of Plaintiff's Second Claim for failure to state a claim should therefore be GRANTED.

2.      **Dismissal With Prejudice**

The dismissal of a plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, although "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the problems with Plaintiff's Second Claim, as pleaded, are substantive in that Defendant's deceptions as pleaded in the SAC are not sufficiently systemic in nature as to qualify as

15

being consumer oriented, the first prerequisite for a valid § 349 claim such that further pleading cannot cure it and, thus, would be futile.  Additionally, Plaintiff's injury allegations are self-defeating.

Accordingly, the dismissal of Plaintiff's Second Claim should be with prejudice and without leave to replead.

## CONCLUSION

Based on the foregoing, Defendant's Motion (Dkt. 27) should be GRANTED; Plaintiff's Second Claim should be DISMSSED for failure to state a claim; such dismissal should be with prejudice and without leave to replead.

Respectfully submitted,

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 15th, 2022
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   December 15th, 2022
         Buffalo, New York